UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SHARON L. PALMER,<br><br>            Plaintiff,<br><br>   v.<br><br>SENTINEL INSURANCE COMPANY LTD,<br><br>            Defendant. | CASE NO. C12-5444 BHS<br><br>ORDER REQUESTING ADDITIONAL BRIEFING AND RENOTING MOTION |

This matter comes before the Court on Plaintiff Sharon Palmer's ("Palmer") motion to compel (Dkt. 22). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL & FACTUAL BACKGROUND

On April 27, 2012, Palmer filed a lawsuit against Sentinel Insurance Company, Ltd. ("Sentinel") in Pierce County Superior Court. Dkt. 4 at 6-9. On May 18, 2013, Sentinel removed the action to this Court on the basis of diversity jurisdiction. *See* Dkt.

2. Palmer's complaint contains allegations for breach of contract, violations of the insurer's duty of good faith by its denial of coverage for a burglary and fire occurring on her property; violations of the Consumer Protection Act; breach of statutory and regulatory duties under Washington State statutes and codes; unreasonable denial of her claim for coverage; and for extreme and outrageous conduct based on the foregoing alleged unlawful conduct. Dkt. 4 at 7-8.

On May 25, 2013, Sentinel answered, pleading affirmative defenses which, in part, include that Palmer's claims are barred in whole or in part by Palmer's violation of their insurance policy relating to fraud and concealment, unclean hands, and violations of RCW 48.135.005, et seq., intentional concealment, misrepresentation, or fraud, relating in part to Palmer's misrepresentations regarding the value of her personal possessions, that her property was the subject of burglary, and that she was not involved in the fire that damaged the property at issue. Dkt. 11 at 4.

On April 29, 2013, Palmer filed the instant motion to compel, seeking to compel disclosure of (1) alleged attorney-client privileged or work product documents and (2) alleged propriety or commercial information as well as (3) to overrule objections and compel responses to multiple Requests for Production ("RFPs"). Dkt. 22. On May 13, 2013, Sentinel responded in objection to Palmer's motion. Dkt. 25. On May 17, 2013, Palmer replied. Dkt. 27.

On May 23, 2013, the Court held a telephonic hearing on Palmer's motion. Dkt. 30. During the hearing, with regard to the alleged proprietary and commercial information, the Court directed the parties to review this district's model protective order

and consider filing a stipulated protective order. *Id*. The parties did so. Dkt. 34. With regard to the RFPs not involving attorney-client privilege or work product documents, the Court directed the parties to meet and confer. Finally, the Court ordered the parties to file individual briefs on the standards applicable to disclosure of the documents withheld pursuant to the attorney-client privilege and work product doctrine in bad faith insurance actions as articulated by the Washington State Supreme Court in *Cedell v. Farmers Ins. Co.*, 176 Wn. 2d 686, 698-99 (2013). The Court also ordered Sentinel to file the documents withheld on the aforementioned bases for in camera review. Dkt. 34. Thus, the only remaining issue in this motion to compel involves the production of alleged attorney-client privileged and work product documents.

## II. DISCUSSION

### A. Legal Standards

The Washington Supreme Court has attempted to clarify the scope of the attorney-client privilege and work product protection for an insurer in a bad faith claim from its insured. The court held in *Cedell* that when an insured brings a bad faith claim, attorney-client privilege and work product protections are presumptively inapplicable to the insurer's claim-adjustment communications. An insurer may overcome the presumption "by showing its attorney was not engaged in the quasi-fiduciary tasks of investigating and evaluating or processing the claim, but instead in providing the insurer with counsel as to its own potential liability; for example, whether or not coverage exists under the law." *Id*. at 699. The *Cedell* Court was not content to allow the insurer to merely assert claims of privilege, it "entitled" the insurer "to an in camera review of the claims file, and to the

redaction of communications from counsel that reflected the mental impressions of the attorney to the insurance company, unless those mental impressions are directly at issue in its quasi-fiduciary responsibilities to its insured." *Id.*

**B.     Application of the Standards**

The Court has performed an in camera review of the documents submitted by Sentinel in Exhibit B (Dkt. 33-1).  Based on the documents before the Court, it finds many of the documents are duplicative of one another, as some are reproduced and included in communications to various persons.  Additionally, the Court finds Sentinel's attorney Dana Ferestien may have performed quasi-fiduciary duties for Sentinel in this case as well as provided advice about potential liability and coverage under the Palmer's policy with Sentinel in her capacity as counsel.  Sentinel has never argued the contrary in its responses.  *See* Dkts. 25 and 32.  Prior to the initiation of the present lawsuit in 2012, it seems that Ferestien was engaged in the investigation by interviewing witnesses and perhaps in retaining and directing experts to investigate the claim.  Ferestien also clearly acted in the role of counsel in assessing information as the investigation progressed in order to provide Sentinel with updated liability and coverage assessments.

Despite Palmer's assertion to the contrary (Dkt. 35 at 5), under *Cedell*, attorneys are apparently not prohibited from performing mixed duties, although the information an attorney gathers in performing quasi-fiduciary tasks is never covered by the attorney-client privilege.  *Cedell*, 176 Wn. 2d at 699, n. 5 and 702.  However, as this Court interprets *Cedell*, in cases involving allegations of bad faith in the investigation, processing or handling of an insured's claim, where an attorney acts both in a quasi-

fiduciary capacity by, for example, involving him or herself in the investigation or its supervision, and as counsel advising its client about potential liability, including coverage issues, the attorney-client privilege and work-product protections are likely to be waived in many, if not most cases. *Cedell,* 176 Wn. 2d at 700. This is so because counsel's legal analysis and recommendations to the insurer regarding liability generally or coverage in particular will very likely implicate the work performed and information obtained in his or her quasi-fiduciary capacity. Although *Cedell* seems to offer a workaround for attorneys who may act in dual capacities by suggesting in the footnote cited above (*see supra*) that attorneys who engage in mixed roles should keep separate files for actions taken in each capacity, that suggestion is likely not workable in many cases. The *Cedell* court's suggestion will likely *not* provide a practical solution for many attorneys working in dual capacities because the file containing counsel's legal advice is very likely to contain the mental impressions directly at issue in the information contained in the other file where the attorney stores the information gathered in the course of executing his or her quasi-fiduciary duties.

      Because Ferestien appears to have performed quasi-fiduciary duties, the documents submitted to this Court as Exhibit B containing her legal advice, even those relating to coverage, appear to have been waived because her "mental impressions are directly at issue in" Sentinel's "quasi-fiduciary responsibilities to its insured." *Cedell*, 176 Wn. 2d at 699. If this is so, Palmer is entitled, without redaction, to all the documents included in Exhibit B containing Ferestien's impressions regarding the

1  insurer's quasi-fiduciary duties to the insured, including her liability assessments and
2  coverage advice.  *Cedell*, 176 Wn. 2d at 699 and 702.
3  In Exhibit B, the Court also identified email communications with attorney
4  Rodney C. Short ("Short"), who, based on the information in the record, does not appear
5  to have been involved in quasi-fiduciary functions in this case, and thus the attorney-
6  client privilege would likely not be waived.  However, the Court is uncertain about
7  whether Short participated in any quasi-fiduciary duties, especially where the parties have
8  brought no other information about the nature of his work on Palmer's claim to the
9  Court's attention. Additionally, Sentinel admits in its response that:

> Sentinel's attorneys did engage in activities to assist Sentinel in fulfilling its quasi-fiduciary obligations. Specifically, Sentinel's attorneys examined witnesses, communicated with Plaintiff's attorneys and her Public Adjuster, analyzed Plaintiff's claimed losses, etc., all before Sentinel reached its final coverage decision.

13  Dkt. 32 at 3-4.  Palmer essentially maintains that based on this admission by Sentinel,
14  Palmer is entitled to all documents withheld by the insurer because Palmer interprets
15  Sentinel's response to mean that all of the attorneys involved in the case participated in
16  Sentinel's quasi-fiduciary tasks.  Dkt. 35 at 2.  If Short acted only in a quasi-fiduciary
17  capacity and the documents withheld reflect the information or his mental impressions
18  about the information he gathered in the course of his quasi-fiduciary duties, then the
19  attorney-client privilege is waived and no work product doctrine attaches, as he would
20  functionally be a claims adjuster.  If Short acted in a dual capacity, as Ferestien appears
21  to have done, then the legal principles under *Cedell* which apply to Ferestien's
22  communication equally apply to Short's.  *See supra.*

Finally, in Exhibit B, there is a copy of a single sheet of lined paper marked in part "Atty/Client Communication – Privileged & Confidential" which neither contains the name of its author nor to or for whom it was produced or sent. However, two sentences of the document mention something about the investigation and coverage; the other information appears to be notes on the progress of the investigation or coverage more generally. Due to the ambiguities appearing in this document, the Court cannot determine what, if any, protections may possibly apply under *Cedell*.

Prior to making its determination regarding Palmer's motion to compel and in accordance with *Cedell*, the Court requests additional briefing from Sentinel to provide it the opportunity to overcome the presumption that Palmer is entitled to all the aforementioned documents. *Cedell,* 176 Wn. 2d at 700. Given the standard articulated above and the Court's interpretation of *Cedell*, Sentinel must submit a brief explaining whether or not *each* document from Exhibit B should be produced and provide legal analysis supporting its position as to each document. This brief shall not be filed under seal so that Palmer may view Sentinel's explanations. The parties are directed to meet and confer by July 17, 2013 to consider whether they can come to an agreement on the production of the documents at issue. If the parties reach no agreement, Palmer shall submit a brief by July 19, 2013, which explains its opposition to Sentinel's position on some or all of the documents that remain at issue.

Alternatively, if after reading this order, Sentinel concludes that under *Cedell* and this Court's interpretation of it, additional documents should be produced, Sentinel should immediately (not later than five days after the order's issuance) provide Palmer

1 with those documents and file a notice with the Court indicating which documents from
2 Exhibit B it has provided to Palmer.

### III. ORDER

Therefore, it is hereby **ORDERED** that Sentinel must submit a brief, not to exceed 12 pages, by July 15, 2013, in accordance with directives set forth above, unless Sentinel files a notice with this Court indicating that it has produced all the Exhibit B documents to Palmer. Additionally, if no agreement is reached by the parties after they meet and confer as directed above, Palmer shall submit a brief by July 19, 2013, not to exceed 7 pages, in opposition to Sentinel's position. Accordingly, Palmer's motion to compel (Dkt. 22) is renoted for consideration on July 19, 2013.

Dated this 9th day of July, 2013.

BENJAMIN H. SETTLE
United States District Judge