UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHARON L. PALMER,

Plaintiff,

v.

SENTINEL INSURANCE COMPANY, LTD.,

Defendant.

CASE NO. C12-5444 BHS

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Sentinel Insurance Company, LTD's ("Sentinel") motion for summary judgment (Dkt. 36). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On April 27, 2012, Plaintiff Sharon Palmer ("Palmer") filed a complaint against Sentinel in Pierce County Superior Court for the State of Washington. Dkt. 2. Palmer asserts causes of action for breach of contract; bad faith; a violation of the Washington Consumer Protection Act, RCW Chapter 19.86; breach of other statutory and regulatory

duties; a violation of the Washington Insurance Fair Conduct Act, RCW 48.30.015; and the tort of outrage. Dkt. 4, Exh. A

On June 26, 2013, Sentinel filed a motion for summary judgment. Dkt. 36. On July, 15, 2012, Palmer responded. Dkt. 44. On July 19, 2013, Sentinel replied. Dkt. 50.

## II. FACTUAL BACKGROUND

The facts of this case are largely uncontested. The parties, however, contest the inferences that may be drawn from the facts and the consequences of Palmer's contradictory statements.

Palmer was the owner of a house and outbuildings located at 36702 Meridian East, Eatonville, Washington (the "premises"), which was insured by a homeowners' policy issued by Sentinel. The policy covered loss or damage to the premises for the period December 11, 2009 to December 11, 2010, and included an exclusion of coverage if an insured "Intentionally concealed or misrepresented any material fact or circumstance; . . . [¶] relating to this insurance." Dkt. 37, Ex. 1 at p. POL026.

The afternoon of February 21, 2010, Palmer reported to the Pierce County Sheriff's Department that the premises had been burglarized. At 7:41 p.m. that evening, the local 911 dispatcher received a report of a fire at the premises. At 7:47 p.m., law enforcement called Palmer to notify her about the fire. The first responder observed that multiple fires had started in unconnected areas of the house and a large shop on the premises. The Fire Marshal's report indicated the probable cause of the fire was arson. The Deputy Fire Marshal's equipment detected the presence of combustible gas residues

in a severely burned room in the house, and the Deputy Fire Marshal observed that the fire exhibited unusual burn patterns.

After Palmer submitted a claim to Sentinel, Sentinel's Special Investigations Unit ("SIU") investigator Joel Smith contacted Palmer to investigate. Mr. Smith spoke with Palmer in late February and early March 2010, and she explained that due to problems with the well at the premises she had recently moved to a rental property with her nephew, two sons, and her ex-husband, Jesse Palmer, but that Jesse had left the day of the fire to live in Texas. Palmer also stated she was approximately three months behind on her mortgage payments for the property at the time of the fire, and that the well on the property did not work. Palmer claimed the well was inoperable due to a recent flood, which led to Palmer obtaining assistance from FEMA to pay for the rental property.

During an interview on February 25, Smith asked Palmer about her phone calls. Specifically, he asked about any calls from Jesse Palmer the day of the fire. Palmer indicated that she "thought he called me several" times and was "in tears that he was leaving," but after scrolling through her call history on her cellular phone, she only identified one missed call from Jesse at 1:32 p.m. the afternoon of the fire. Palmer then continued to scroll through her call history and reported that at 7:51 p.m. on the evening of the fire, she had tried to call her friend "Keith." Palmer also told Sentinel's fire investigator, Don Easton, that she did not talk to Jesse on the day of the fire and that the first contact with Jesse was around 10:30 a.m. the next morning.

After these interviews, Sentinel contacted a number of people who had been at the premises and rental property in the days preceding the fire, including among others

Palmer's nephew, brother, and two sons. Sentinel also obtained a transcript of a recorded statement given to a Sheriff's Department investigator by Palmer's nephew's girlfriend, who was at the residence premises until shortly before the fire. Each person gave varying accounts of the details of the day of the fire, including their own whereabouts and the whereabouts and actions of Jesse. Palmer's nephew's girlfriend stated that Jesse had been repeatedly calling Palmer the day of the fire to ask if they had left the premises yet.

Sentinel conducted examinations under oath of Palmer in May 2010, July 2010, and January 2011. At the May 4, 2010 examination, Palmer stated that she spoke with Jesse "[a] couple of times at least" on the day of the fire, but "all before the fire" and when he called her. Following this examination, Sentinel asked Palmer to provide relevant cell phone bills for the account that Palmer, Jesse, and their two sons share. Palmer provided records that were later determined to be altered based on records Sentinel obtained from Verizon via the police investigation of the fire. The actual records purportedly show that Jesse's phone was near the premises around the time the fire was reported. The records also show that 37 calls were made between Palmer's phone and Jesse's phone on the day of the fire.

On January 19, 2011, Sentinel questioned Palmer about the actual cell records. Palmer admitted that Jesse tried to contact her constantly around the time of the fire, and they had several discussions throughout the day of the fire. Palmer also remembered that she and Jesse had emotional calls the day of the fire because of his cancer and him leaving, and that she was upset because of Jesse's repeated calls insisting that Palmer's brother, Randall Stecker, vacate the premises that day. These statements contradict

Palmer's original statements about Jesse calling her a couple of times, in tears about leaving, and her statement that she called Keith at 7:51 p.m. after the police called about the fire.

On July 8, 2011, Sentinel denied Palmer's claim on the grounds of concealment and misrepresentation, the discrepancies between Palmer's bankruptcy petition and her personal property loss claim, and Palmer's alleged failure to cooperate with Sentinel's investigation. Sentinel, however, paid the mortgage holder, American Home Mortgage Servicing Inc., $330,498.30 pursuant to separate obligations under the policy.

## III. DISCUSSION

### A. Motions to Strike

Both parties filed motions to strike the opposing party's evidence. Dkts. 44 & 50. Palmer moves to strike Sentinel's exhibits 20 and 26, which are expert reports offering opinions on the location of the cell phones during the relevant time periods. Palmer objects on the grounds that the authors are not qualified experts and the methods that they use are not considered reliable in the scientific community. Dkt. 44 at 1–2. Although these reports add little, if any, support to Sentinel's motion, Palmer has failed to show, at this time, that the reports are inadmissible expert opinions. Therefore, Palmer's motion is denied.

Sentinel moves to strike portions of the declaration of Palmer, the second declaration of Palmer's counsel, and a letter from Warner Webb. Dkt. 50 at 11–13. With regard to the declarations, the Court grants the motion as to argumentative and speculative statements. With regard to the letter, Sentinel contends that it has never been

produced in discovery, it lacks authentication and foundation, and, to the extent it relies on another report, it is hearsay. For the purposes of this motion, the Court agrees and will disregard the letter.

**B.      Summary Judgment**

Sentinel moves for summary judgment on Palmer's breach of contract claim based on multiple misrepresentations by Palmer. In the alternative, Sentinel moves for summary judgment on Palmer's extra-contractual claims because Sentinel's actions were not unreasonable or outrageous.

**1.      Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**2. Breach of Contract**

Under Washington law, a clause voiding an insurance policy for the insured's material misstatement is enforceable. *See Mutual of Enumclaw Ins. Co. v. Cox*, 110 Wn.2d 643, 649 (1988); *Saint Paul Mercury Ins. Co. v. Salovich*, 41 Wn. App. 652, *review denied*, 104 Wn.2d 1029 (1985). Such a clause is enforced regardless of whether the misstatements caused any prejudice to the insurance company by causing it to bear additional risk. *Cox*, 110 Wn.2d at 649. The key question is whether the misstatement was material. *Id.* While materiality is generally a mixed question of law and fact, it may

be decided as a matter of law "if reasonable minds could not differ on the question." *Long v. Insurance Co. of N. Am.*, 670 F.2d 930, 934 (10th Cir. 1982).

In this case, Sentinel argues that it is entitled to summary judgment because reasonable minds could not differ on the issue of whether Palmer's numerous misrepresentations were material and were intended to deceive Sentinel. Dkt. 36 at 18–21. The Court, however, is unable to reach that conclusion. Assuming for the purposes of this motion that Palmer's statements were untruthful instead of mere lapses of memory or confusion, all the admissible evidence shows is that the phones were used to place calls. Reasonable minds could differ as to the inferences that can be made from those contacts. One inference, whether or not plausible, is that the Palmers were engaging in insurance fraud. However, because "Sentinel has not shown which if any of the listed calls actually resulted in words, let alone a conversation, between Ms. Palmer and her ex-husband" (Dkt. 44 at 6), one could also infer that the contacts were not related to the house fire or the insurance claim. Therefore, the Court denies Sentinel's motion for summary judgment on Palmer's breach of contract claim because material questions of fact exist for the factfinder.

**3.    Extra-Contractual Claims**

To state viable claims for insurer bad faith and CPA/IFCA violations, the insured must be able to establish that insurer's investigation and/or coverage decision in this matter were unreasonable, frivolous, or untenable. *See e.g. Olds-Olympic, Inc. v. Commercial Union Ins. Co.*, 129 Wn.2d 464 (1996). To state a viable outrage claim, a

plaintiff must be able to prove that the defendant's conduct was extreme and outrageous. *Klepfel v. Bokor*, 149 Wn.2d 192, 195 (2003).

In this case, Sentinel contends that its actions were reasonable and in no way rose to the level of extreme or outrageous conduct. Dkt. 36 at 21–23. The Court agrees as to the tort of outrage because reasonable minds could not differ on this issue. The Court, however, is unable to reach that conclusion as to the other extra-contractual claims. Reasonable minds could differ whether Palmer's contradictory statements were sufficient to deny her claim. Moreover, it was almost seventeen months from the fire to the denial of Palmer's claim. Although Sentinel argues that the time was necessary to properly investigate the claim, reasonable minds could differ whether it was unreasonable to spend that amount of time investigating the claim. This is especially true in light of the letter Sentinel's lawyer sent to Sentinel in September of 2010 in which Sentinel was aware of most of the facts supporting its denial. *See* Dkt. 48, Exh. 1. Therefore, the Court grants Sentinel's motion on Palmer's claim for outrage and denies the motion as to the other extra-contractual claims.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Sentinel's motion for summary judgment (Dkt. 36) is **GRANTED** on Palmer's claim for outrage and **DENIED** on all other issues.

Dated this 26th day of August, 2013.

BENJAMIN H. SETTLE
United States District Judge